SAMUEL J. HINCH, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] The Act giving parties carrying causes to the Supreme Court thirty days to prepare and submit a bill of exceptions to the Judge who tried the cause, does not change the law in regard to the sentence of prisoners convicted of capital offences.

[2.] On the trial of a prisoner for murder, who endeavors to make out a case of self-defence, it is competent to prove, on the part of the prosecution, that the prisoner was a large and deceased a small man.

[3.] It is right for the Court, on trials for murder, when the accused relies on self defence as a justification, to enlighten the jury as to the law bearing upon that defence.

[4.] The latter clause of the 15th section of the 6th division of the penal code, does not apply to cases of mutual combat, only, but to cases in which the accused declines a contest on equal terms, but shoots down his assailing adversary.

Murder, from Muscogee county. Tried before Judge WORRILL, May Term, 1858.

The jury found Hinch guilty, and the Judge sentenced him to be executed on the second day of July, proximo. The defendant's counsel moved in arrest of judgment, upon the ground, that said defendant was ordered to be executed within thirty days from the adjournment of the Court; and also moved the Court for a new trial, upon the following grounds:

1st. Because the verdict of the jury, in said case, was contrary to law and evidence.

2d. Because the Court allowed the prosecution to prove the deceased a small man, and prisoner a large man.

3d. Because the Court erred, in charging the jury, after having charged all the grades of homicide, by reading the definitions from the code, "if a person kill another in his defence, it must appear that the danger was so urgent and pressing at the time of the killing, that in order to save his own life, the killing of the other was absolutely necessary; and it must appear also, that the person killed was the assailant, or that the slayer had, really and in good faith en-

deavored to decline any further struggle, before the mortal blow was given," and refused to charge the jury, upon request of counsel for prisoner, that said last section of the code applied to cases of mutal combats only; which said motion in arrest of judgment, and for a new trial were refused. Whereupon, counsel for prisoner excepted and assign error.

The ground in the motion for a new trial, that the verdict was contrary to the evidence, not being insisted on, it is deemed unnecessary to give a statement of the testimony.

RAMSEY & CARITHERS, for plaintiff in error.

OLIVER, Sol. Gen.; WELLBORN, JOHNSON & SLOAN; and C. J. WILLIAMS, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

[1.] By law, the Court may fix any time for the execution of a prisoner convicted of a capital offence, between twenty and sixty days from the day of the sentence. *Cobb*, 840. The right conferred on parties to suits in the Circuit Courts, to have thirty days to draw up and submit to the Judge who heard the cause, a bill of exceptions, does not change or modify in any respect, the statute requiring the Court to fix the time for the execution of prisoners. The Court cannot fix the time within twenty days of the day of the sentence, and that gives time enough, if we were allowed to consider that matter in deciding the question.

The plaintiff in error moved for a new trial, on three distinct grounds. The first ground, "that the verdict of the jury in said case was contrary to law and evidence," was not insisted on in this Court.

[2.] The Court admitted evidence that the deceased was a small man, and the prisoner was a large man, and the ad-

mission of this evidence is urged as a ground for a new trial. From the proof submitted to the jury by the defendant, it is manifest that the counsel for the prisoner was attempting to make out a case of justifiable homicide, in self-defence. To make out this defence, it must appear that, the danger to the person killing "was so urgent and pressing, at the time of the killing, in order to save his own life, the killing of the other was absolutely necessary." If the prisoner might have prevented injury to himself without taking the life of the deceased, by reason of his superior size and strength, the killing was not absolutely necessary in order to save his own life. The evidence of one of the witnesses is, that he supposed the deceased, when he was approaching him, the witness, with an open knife, intended to cut him, but he stopped him. The testimony of another witness is, that when the deceased was going upon Stowers with his knife, the prisoner stopped him. He had strength enough to prevent an injury to others, without taking the life of the deceased. The evidence ought to have been admitted, to enable the jury to form a more satisfactory judgment upon the necessity of taking the life of the deceased.

[3.] We see nothing in the charge of the Court, or in his refusal to charge as requested, to warrant the granting of a new trial. A killing in self-defence was unquestionably attempted to be established by the prisoner, and the charge of the Court was, as it ought to have been, to enlighten the jury as to the law bearing upon that defence; to impress upon them, that it is not every danger to the person of the slayer which justifies the killing of another; but that it is a danger to his life so great, that in order to save his own life, *at the time of the killing*, the killing of the other was *absolutely necessary*.

[4.] We do not think that the last section of the charge, given from the code, applies to cases of mutual combat only. Mutual combats must be on sudden provocation, without malice, to reduce the homicide to manslaughter. On such

Hinch vs. The State.

occasions, the parties usually come to blows upon provocation. But if one party, in a slight assault, declines a contest on equal terms, and shoots the assailant down, is the offence to be mitigated to manslaughter? Or to be held to be justifiable homicide? He does not act or defend on the ground, that he feared the party killed, but on the ground of the absolute necessity of taking the life of the assailant, for the preservation of his own. The object of that part of the section to which the request refers, is to impress on the Court and jury, that the accused must have been without blame in the killing; that he declined a contest in the beginning, or after it had begun; that he was unwilling to enter into it; and that it was pressed upon him by the deceased, and that the killing was absolutely necessary to the preservation of his own life.

The last ground in the motion is, in effect, the same as the first, which was abandoned, that the jury found contrary to law and evidence, for if there was no evidence of malice, there could have been no finding of murder. But upon looking through the evidence, no one, we regret to say, can doubt of the existence of malice on the part of the plaintiff in error. If he had no particular malice against the deceased, there was no considerable provocation, and all the circumstances of the killing show an abandoned and malignant heart.

Judgment affirmed.